AO 106 (Rev. 04/10) Application for a Search Warrant

FILED

MAR 0 2 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [initials] DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Apple Iphone 7, IMEI # 353812087348786

Case No. '17MJ0629

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 952, 960, 963 | Importation of a Controlled Substance; Conspiracy to commit the same |

The application is based on these facts:

See attached Affidavit of HSI Special Agent Cory Clifford

☑ Continued on the attached sheet.

☐ Delayed notice of ______ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Cory Clifford, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/2/17

[signature]
*Judge's signature*

City and state: San Diego, California

Hon. Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code Sections 952, 960, and 963, is described below:

One Apple Iphone 7 Cellular Telephone, IMEI # 353812087348786 ("**Target Telephone 1**"). Agents found **Target Telephone 1** on the person of Adrian OLIVERA when he was arrested at the Otay Mesa Port of Entry for importation of cocaine and methamphetamine. **Target Telephone 1** is currently in the possession of United States Department of Homeland Security, U.S. Customs and Border Protection, 9495 Customhouse Plaza, San Diego, 92154 (Seized Property Vault).

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of September 4, 2016 to February 23, 2017:

a. tending to identify attempts to import cocaine or some other controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine or some other controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code Sections 952, 960, and 963, is described below:

One Apple Iphone 7 Cellular Telephone, IMEI # 353812087348786 ("**Target Telephone 1**"). Agents found **Target Telephone 1** on the person of Adrian OLIVERA when he was arrested at the Otay Mesa Port of Entry for importation of cocaine and methamphetamine. **Target Telephone 1** is currently in the possession of United States Department of Homeland Security, U.S. Customs and Border Protection, 9495 Customhouse Plaza, San Diego, 92154 (Seized Property Vault).

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of September 4, 2016 to February 23, 2017:

a. tending to identify attempts to import cocaine or some other controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine or some other controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>(1) Apple Iphone 7 Cellular Telephone IMEI 353812087348786 | Case No:<br><br>AFFIDAVIT OF SPECIAL AGENT CORY CLIFFORD IN SUPPORT OF SEARCH WARRANT |

**AFFIDAVIT**

I, Special Agent Cory Clifford, being duly sworn, declare and state:

**INTRODUCTION**

1. This affidavit supports an application to search the following property:

Apple Iphone 7, IMEI 353812087348786 ("**Target Telephone 1**")

as described in Attachment A, and seize evidence of crimes as outlined in Attachment B, specifically, Title 21, U.S.C., §§, 952, 960, and 963, Importation of Methamphetamine and Cocaine, and Conspiracy to Import the same.

2. **Target Telephone 1** was seized from Adrian OLIVERA ("OLIVERA") on February 23, 2017, at the time of his arrest at the Otay Mesa, California Port of Entry for importing 49.68 kilograms (109.52 pounds) of cocaine and 11.60 kilograms (30.93 pounds) of methamphetamine.

3. Based on the information below, there is probable cause to believe that a search of **Target Telephone 1** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics smuggling, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this

affidavit. Because this affidavit is made for the limited purpose of obtaining a search warrant for **Target Telephone 1**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

**EXPERIENCE AND TRAINING**

5. I am currently employed with the United States Department of Homeland Security ("DHS"), as a Special Agent for Homeland Security Investigations ("HSI"). I have held my current position with HSI since September 2015. I am a graduate of the Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training Program at the Federal Law Enforcement Training Center ("FLETC"). During the course of my training at FLETC, I learned the fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence-all in relation to violations of the United States Code.

6. Before I joined HSI, from June 2008 to September 2015, I worked as a Border Patrol Agent for the United States Border Patrol ("USBP"). I was employed as a full-time, sworn federal agent with the USBP. I graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico.

7. Currently, I am assigned to a Narcotics Group in San Ysidro, California. I primarily investigate violations of the United States Code that stem from the international border between Mexico and the United States, including drug smuggling. I have participated in investigating various drug trafficking organizations that are involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. I have spoken with other agents with extensive experience in narcotics smuggling investigations. Through my experience and training, I have gained a

working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

8. As a Special Agent with HSI, my duties include the investigation of narcotics-related violations of Title 21 of the United States Code and the California Health and Safety Code. I have participated in and conducted investigations of violations of various State and Federal criminal laws, including distribution of controlled substances, use of communication facilities to commit narcotic offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering. These investigations resulted in the arrests of individuals who have imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and methamphetamine. These investigations also resulted in the arrest of individuals who have laundered proceeds related to those illegal activities. These investigations resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs. Through these investigations and training, I am familiar with the operations of illegal international Drug Trafficking Organizations ("DTO") in various parts of the world, including Mexico.

9. By virtue of my employment as a Special Agent with HSI, I have performed various tasks, which include, but are not limited to:

a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

b. Participating in the tracing of monies and assets gained by controlled substance traffickers from the illegal sale of controlled substances and/or the laundering of monetary instruments;

c. Interviewing witnesses, cooperating individuals, and informants

relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances (laundering of monetary instruments); and

d. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics and the laundering of monetary instruments.

10. The nature of my work with HSI requires that I keep apprised of recent trends and developments involved in the investigations of narcotics traffickers, and I regularly communicate with agents from the Drug Enforcement Administration, United States Border Patrol, Customs and Border Protection, and various other local and state law enforcement officers operating within the Southern District of California.

11. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators to further their criminal activities. Conspiracies involved in the smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular, digital, and satellite telephones, in part, because these individuals believe

law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular, digital, and satellite telephones.

12. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal goods will arrive at predetermined locations;

d. Drug smugglers will use cellular telephones to direct couriers to synchronize an exact drop off and/or pick up time of their illegal goods;

e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

f. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

13. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal

knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

14. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other Homeland Security Investigations Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## FACTS SUPPORTING PROBABLE CAUSE

15. On February 23, 2017, at approximately 5:00 a.m., OLIVERA, a United States Citizen, applied for permission to enter into the United States from Mexico through the Otay Mesa, California, Port of Entry. OLIVERA was the driver, sole occupant, and registered owner of a black 2016 Jeep Cherokee bearing Oregon license plate.

16. In primary inspection, a U.S. Customs and Border Protection Officer ("CBPO") asked where OLIVERA was going and if he had anything to declare. OLIVERA stated that he was going to work at Jensen in San Diego, and had nothing to declare. The CBPO asked OLIVERA to open the trunk of the vehicle. The CBPO noticed that OLIVERA was nervous and could not open the trunk initially. Once the trunk was opened, the CBPO examined it. The CBPO noticed a speaker box within the trunk. As the CBPO inspected the speaker box, he noticed that OLIVERA kept looking at him through the rearview mirror. The CBPO asked OLIVERA if the box was bolted down since the CBPO could not lift it. OLIVERA stated that it was not bolted down. The CBPO noticed that the speaker box was not connected and that it

was extremely heavy.

17. The CBPO then requested that a CBP Canine Enforcement Officer ("CEO") screen the vehicle. A CBP CEO arrived and inspected the vehicle, and the canine alerted to the speaker box. The CBP CEO probed the rubber lining of the left speaker panel with a pry-tool and discovered a plastic-wrapped package within the speaker box. OLIVERA was then escorted to the security office, and the vehicle was referred to the secondary inspection area. As the CBPO escorted OLIVERA to the security office, OLIVERA stated that he had purchased the speaker box four weeks ago and that he had nothing in the vehicle. OLIVERA again stated that he was going to Jensen in San Diego to work. The CBPO asked OLIVERA if the vehicle belonged to him and OLIVERA stated that it belonged to him but he was making payments on it.

18. In the secondary inspection area, a CBPO conducted an X-ray examination of the vehicle using the Z-Portal machine. While analyzing the images, the CBPO noticed anomalies behind the rear seat of the vehicle, in the speaker box.

19. Another CBPO conducted a seven-point inspection of the vehicle. The inspection resulted in the discovery of a total of fifty-two (52) packages concealed within the speaker box inside the trunk of the vehicle. Forty-three of the packages field-tested positive for cocaine. Nine packages field-tested positive for methamphetamine. The total weight of the forty-three packages of cocaine was approximately 49.68 kilograms (109.52 pounds). The total weight of the nine packages of methamphetamine was approximately 11.60 kilograms (25.57 pounds). OLIVERA was arrested and **Target Telephone 1** was seized from his person.

20. Based upon my experience and investigation in this case, I believe that OLIVERA, as well as other persons as yet unknown, were involved in an ongoing conspiracy to import cocaine and methamphetamine. Based on my experience

investigating narcotics smugglers, I also believe there is probable cause OLIVERA used **Target Telephone 1** to coordinate with co-conspirators regarding the importation and distribution of the methamphetamine and cocaine, and to otherwise further this conspiracy both inside and outside of the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones which may identify other persons involved in narcotics trafficking activities.

21. Based upon my experience, arrangements for narcotics smuggling activities are often made well ahead of time. Many times arrangements are rescheduled or aborted at the last minute due to factors inherent in narcotics smuggling and distribution, such as law enforcement presence or activity. In addition, smugglers often operate on a continual basis using the same vehicles that they have been successful with until they are apprehended. Having such experience, I believe that information relevant to OLIVERA's narcotics smuggling activities exists on **Target Telephone 1** prior to the date of his arrest, and may appear as early as his first international crossing with the vehicle, on September 4, 2016. Based upon my training and experience I believe that such relevant information may exist within **Target Telephone 1** as early as September 4, 2016, if not earlier.

22. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of OLIVERA and co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## METHODOLOGY

23. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

26. Based on all of the facts and circumstances described above, there is probable cause to conclude that OLIVERA used **Target Telephone 1**, to facilitate the offenses of importation of cocaine and methamphetamine and conspiracy. **Target Telephone 1** was likely used to facilitate the offenses by transmitting and storing data and contained evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

27. There is also probable cause to believe that evidence of the illegal activities committed by OLIVERA and his co-conspirators continues to exist on **Target Telephone 1**, as the phone was seized in the middle of the offenses and has since been securely stored by CBP.

//

//

//

//

//

//

//

//

//

//

//

WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Cory Clifford
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 2d day of March, 2017.

HON. KAREN S. CRAWFORD
United States Magistrate Judge